[L. A. No. 2402.    Department One.—February 7, 1910.]

# R. E. HOUGHTON, Appellant, v. KERN VALLEY BANK et al., Appellants; NG HON KIM, Intervener, Respondent.

PARTITION—INTERVENTION—TAX TITLE FROM STATE—REFERENCE TO MAP IN PLEADINGS—ASSESSMENT PRIMA FACIE INVALID—FAILURE OF PROOF.—In an action for partition of lots in Bakersfield, including "lots 1, 2, 3, in block 132, in the Baker Homestead Tract, according to the map of said tract filed in the office of the county recorder," etc., in which an intervener set forth a tax title thereof from the state, giving the same description, and introduced the assessment book, which merely described the lots: "In Bakersfield, lots 1, 2, 3, block 132," but offered no map or other evidence to identify the lots assessed, the assessment is *prima facie* invalid; and a decree in favor of the intervener must be reversed.

ID.—TAXATION—SUFFICIENCY OF DESCRIPTION—QUESTION OF FACT.— Where the description in an assessment for taxation is of such a nature as to indicate that the property can ordinarily be located only by reference to some recorded map or plat, though none is referred to in the assessment, the description is *prima facie* invalid; yet it may be sufficient in fact, and whether it is sufficient or not is a question of fact to be determined by the trial court upon such evidence as may be presented to show its sufficiency to identify the land.

ID.—LEASE TO INTERVENER—ATTORNMENT TO PRIOR OWNER OF TAX TITLE —CONSENT OF LESSOR—INTERVENER NOT ESTOPPED.—Where the owner of record made a lease to the intervener, the original term of which had not expired when the tax title was obtained by him from a former owner thereof, but it appears that, with the consent of the lessor, the intervener had attorned to the prior owner of the tax title, before he acquired the same, the intervener is not estopped as against the original lessor to assert such title against him.

ID.—EVIDENCE—PAYMENT OF TAXES BY INTERVENER—IMMATERIALITY— WAIVER OF OBJECTION.—Although evidence of the payment of taxes on the property by the intervener was immaterial, objection thereto was waived, where no exception is shown to the ruling admitting the tax receipts.

ID.—COMPUTATION OF TAXES AND COSTS IN DEED TO STATE.—It is held that, considering all of the property included in the tax-collector's deed to the state, the whole amount of taxes and costs was correctly computed and stated in the deed.

ID.—BID UPON SALE BY STATE—INCLUSION OF OTHER TAXES—RECITAL IN DEED.—Where no evidence is shown as to other taxes unpaid at the date of the sale by the state, the recital in the state's deed that the amount bid was not less than the amount required by section

CLVII Cal.—19

3897 of the Political Code, must prevail, in the absence of any show-ing to the contrary.

ID.—SALE OF LOTS ASSESSED IN SINGLE PARCEL.—Where the lots were-assessed as a whole, and they are contiguous and owned by a single individual, and are unimproved, they were properly assessed as. one parcel; and a sale of them in bulk was in effect a proper sale of them as a single parcel.

ID.—QUESTION AS TO SALE IN SEPARATE LOTS OR PARCELS—DETERMINA-TION BY ASSESSMENT-LIST.—The question as to the lots or parcels in which the land is to be sold, is controlled, as a general rule, by the. assessment-list.

APPEAL from a judgment of the Superior Court of Kern· County and from an order denying a new trial. J. W. Mahon,. Judge.

The facts are stated in the opinion of the court.

Octave G. du Py, for Appellants.

Chas. N. Sears, for Intervener, Respondent.

SLOSS, J.—This action was brought to obtain a partition of a number of lots situate in the city of Bakersfield, Kern County. Pending the action Ng Hon Kim filed a complaint in intervention whereby he claimed, as against all the original parties, the title to a portion of the property described in the complaint, to wit: lots 1, 2, and 3 in block 132 in the Baker· Homestead Tract. The plaintiff and the various defendants. answered the complaint in intervention, denying the inter-vener's claim of title. The court found that said intervener· was the owner of the lots claimed· by him, and gave him a decree quieting his title thereto as against the plaintiff and. the defendants. A partition of the remainder of the land de-·scribed in the complaint was ordered. The plaintiff and the· defendants appeal from that portion of the decree in favor· of the intervener, and also from an order denying their motion. for a new trial.

The intervener's asserted title was based on a deed from· the state following a sale for failure to pay taxes. The pro-·ceedings leading up to the making of this deed are fully set· out in the record, and the only question that need here be· determined is whether the evidence sustains the findings of:

the court that the intervener acquired title by virtue of the tax proceedings.

Various objections to the validity of the assessment and the steps taken to collect the same are presented by the appellants.

It is urged that the assessment itself is invalid for want of a sufficient description of the property. The assessment-roll or book was offered in evidence, and showed entries as follows: Under the heading "description of property" appears the words: "In the town of Bakersfield, lot 1, 2, 3" and under the heading "block" the figures "132." Upon the trial the intervener offered no evidence to show whether this represented a general system of numbering in force in the city of Bakersfield, or was according to a subdivision of some tract offered for sale by private owners. The complaint describes the property as "In the Baker Homestead Tract, according to the map of said tract filed in the office of the county recorder of the county of Kern, state of California, on the 3rd day of April, 1889," and the complaint in intervention adopts the description of the complaint. No map showing the location of any lots or blocks was introduced in evidence. Under the decisions of this court there seems to be no escape from the conclusion that the assessment is *prima facie* invalid.

In *Miller* v. *Williams,* 135 Cal. 183, [67 Pac. 788], the description was "lots 13, 14, 15, 16, 17 and 18 in Blk F, Leibrandt Tract. Lots 18 and 20, block C, Kaye and Union Tract." This was held to be insufficient. The case just cited has sometimes been regarded as going to the length of declaring absolutely void an assessment based upon a description of this character. But in subsequent cases it has been explained that the effect of *Miller* v. *Williams* is not so sweeping. In *Best* v. *Wohlford,* 144 Cal. 733, [78 Pac. 293], it was held that an assessment as follows: "Lot four, block one hundred seventy-eight, 14.42 acres, Rancho Rincon del Diablo," might constitute a sufficient description of the land if made certain by the introduction of a map showing the lots and blocks delineated thereon as described in the assessment. Similar was the holding in *Baird* v. *Monroe,* 150 Cal. 560, [89 Pac. 352], where the assessment was upheld when aided by the introduction of the recorded map of the tract designating with certainty the property referred to in the assessment. Finally, in *Fox* v. *Townsend,* 152 Cal. 51, [91 Pac. 1004, 1007], the court had before it a situa-

tion like the one which confronts us here, and substantially similar to that in *Miller* v. *Williams*. The assessment there relied on described the property as follows: "In Los Angeles County. In Electric Ry. Homestead Assn. Tr. lot 17 block 20." The record did not show the introduction of any map in evidence, or that there was any map of any kind in existence at any time during the tax proceedings. The description was held to be insufficient, the court stating its position as follows: "In *Miller* v. *Williams,* an action to quiet title, it was held that such a description in an assessment is not sufficient, *prima facie,* to identify the portion assessed. In that case, as in this, there was no attempt to supplement the assessment description by evidence showing that it did sufficiently identify the land. The theory of the decision, apparently, is that a description of this kind is of such a nature as to indicate that the property can ordinarily be located only by reference to some map or plat, and no such map or plat being referred to as being in existence, the description is *prima facie* insufficient. There is no presumption, in the absence of such a reference, that there is such a map in existence." And, further: "The later cases of *Best* v. *Wohlford,* 144 Cal. 733, [78 Pac. 293], and *Baird* v. *Monroe,* 150 Cal. 560, [89 Pac. 352], accepting the rule of *Miller* v. *Williams,* as correct, establish the doctrine that while such description is *prima facie* insufficient, it may be in fact sufficient to identify the property, and that whether or not it is so sufficient is a question of fact to be determined by the trial court upon such evidence as may be presented on that issue. The party relying on an assessment containing such a description may therefore supplement his case by showing that the description in the assessment was in fact sufficient to identify the land."

Upon the authority of these cases it must therefore be held that there was before the court no evidence sufficient to justify it in holding that the intervener had acquired title by virtue of valid tax proceedings. The proceedings in question were based upon an assessment which, standing alone, was *prima facie* insufficient. Upon a new trial it will, of course, be competent for the intervener to offer evidence for the purpose of showing that the description was sufficient. To this end he may show, if it be the fact, that there was of record at the time of the assessment a map by the aid of which the descrip-

tion of the lots in question would serve to fully and completely identify and locate them.

A new trial will be necessary by reason of what we have stated. As a guide for further proceedings we shall give attention to such other points made by appellants as may arise again.

It appeared that the record title to the land stood in the name of one Celsus Brower, who held as trustee for the plaintiff and the various defendants. Brower had executed a lease of the property to the intervener, who had taken possession thereunder, and had accepted grants from the purchasers under the tax-sales before the expiration of the term of the lease with its extensions. It is urged that said intervener was, as tenant of Brower, estopped to deny the title of the latter. We need not enter into the question whether the doctrine precluded a tenant from questioning his landlord's title prevents reliance upon a tax-title acquired under a sale made after the execution of the lease. (24 Cyc. 955; *Teich* v. *Arms,* 5 Cal. App. 475, [90 Pac. 962].) There was here evidence sufficient to justify the court in finding that after the tax-sale and while the tax title was claimed by one Morrison, Brower had consented to the intervener's payment of rent to Morrison, and had deducted such payment from the amount due under the intervener's original lease. This amounted to an attornment to Morrison with the consent of the landlord. (Civ. Code, sec. 1948; *Jackson* v. *Davis,* 5 Cow. 123, [15 Am. Dec. 451]; 24 Cyc. 956.) Such attornment terminated the relation of landlord and tenant—the relation which forms the sole basis of the alleged estoppel.

It is urged that the trial court erred in admitting in evidence tax receipts showing the payment by the intervener of taxes upon the land in controversy. We do not see the materiality of this evidence (*Keane* v. *Cannovan,* 21 Cal. 291, 303, [82 Am. Dec. 738]), but the record does not disclose any exception to the rulings complained of.

The point, raised for the first time in the reply brief, that the land was sold to the state for more than the amount of taxes and the costs actually due, is not supported by the record. The argument is based upon the assumption that the land sold covered (in addition to the property in controversy) only certain land in the town of Tehachapi and lots in the

Drury Addition. It appears, however, from the tax-collector's deed to the state, that the sale included four lots in the Lowell Addition, and taking these into account it appears that the amount of taxes and costs was correctly computed and stated in the deed.

The same answer may be made to the point that the tax-collector, in receiving and accepting a bid upon the sale by the state, did not include taxes for the years 1900, 1901, and 1902. Section 3897 of the Political Code provides that no bid shall be received or accepted at such sale for less than the amount of all taxes levied upon such property and interest, costs, penalties, and expenses up to the date of such sale. There is, however, no evidence in the record that any taxes were assessed or levied upon the land in question for the years 1900, 1901, and 1902. The deed to the purchaser from the state is *prima facie* evidence of all the facts recited therein (Pol. Code, sec. 3898), and is required to recite "the facts necessary to authorize such sale and conveyance." (Id.) The deed in question recited, as one of such facts, that the amount bid was not less than the amount required by section 3897 of the Political Code. In the absence of any showing to the contrary, this recital must prevail.

The remaining point is that the authorization from the state controller to the tax-collector required the land to be sold in separate lots or parcels, whereas it was in fact sold as a whole. It appears, however, that the land sold, while described as lots 1, 2, and 3, was really assessed as a whole. "The question as to the lots or parcels in which the land is to be sold is controlled, as a general rule, by the assessment list." (27 Am. & Eng. Ency. of Law, 2d ed., 834.) Where separate lots in a block are contiguous, and are owned by a single individual, they may properly be assessed as one parcel. (*People* v. *Morse,* 43 Cal. 534; *Cooper* v. *Miller,* 113 Cal. 338, [45 Pac. 325].) If so assessed, there seems to be no good reason for holding that a sale of them in bulk is not, in effect, a sale of a single parcel. There may, no doubt, be conditions under which a joint assessment of separate lots would be improper, as, for example, where the lots are not contiguous, or improvements on one are charged against all (*Terrill* v. *Groves,* 18 Cal. 149), but no such conditions appear here. The mere fact that the sale included several lots sold, appar-

·ently, in gross, does not, under the rule declared in *Cooper* v. *Miller*, 113 Cal. 238, [45 Pac. 325], establish that the several lots did not, together, form a single parcel.

The portion of the judgment appealed from, and the order ·denying appellants' motion for a new trial, are reversed.

Shaw, J., and Angellotti, J., concurred.